# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ROB-WAL INVESTMENT COMPANY,** | } |
| Plaintiff/Counterclaim Defendant, | } |
| v. | } |
| **ROBERT JACOBSEN,** | } |
| Defendant/Counterclaim Plaintiff, | } Case No.: 2:09-CV-00055-HGD |
| v. | } |
| **BANK OF AMERICA, N.A.,** | } |
| Third Party Defendant. | } |

## MEMORANDUM OPINION

Defendant filed his Amended Counterclaim and Third Party Complaint[1] (Doc. #28) on March 12, 2009. Defendant raised six different counter-claims and third party claims and separately alleged each of them against Plaintiff and Third Party Defendant. Specifically, Defendant asserted the following: (1) Count One: Declaratory Judgment; (2) Count Two: Wrongful Foreclosure; (3) Count Three: Fraudulent Misrepresentation/Promissory Fraud; (4) Count Four: Suppression; (5) Count Five: Conspiracy; and (6) Count Six: Unjust Enrichment. In response, Plaintiff filed its Motion to Dismiss Amended Counterclaim (Doc. #32) on March 26, 2009, and Third Party Defendant filed its

---

[1] It is unclear as to Defendant's basis for impleading Bank of America. Under Federal Rule of Civil Procedure 14(a)(1), "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Impleader, however, is available only "when the third party defendant's liability is secondary to, or a derivative of, the original defendant's liability on the original plaintiff's claim." *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982). Defendant's Third Party Complaint fails to allege derivative or secondary liability. Third Party Defendant raised this concern in its Motion to Dismiss (Doc. #33). Nevertheless, because the court has adopted the magistrate judge's recommendation, which includes severing the remaining counts and realigning the parties, the issue is moot.

Motion to Dismiss Amended Third Party Complaint (Doc. #33) on the same day. The magistrate judge filed a report and recommendation on August 5, 2009, which recommended that (1) Counts One, Two, and Six of Defendant's Counterclaim (Doc. #28) are due to be dismissed; (2) Counts One, Two, and Six of Defendant's Third Party Complaint (Doc. #28) are due to be dismissed; (3) Counts Three, Four, and Five of Defendant's Counterclaim (Doc. #28) are not due to be dismissed; (4) Counts Three, Four, and Five of Defendant's Third Party Complaint (Doc. #28) are not due to be dismissed; (5) Counts Three, Four, and Five in Defendant's Counterclaim and Third Party Complaint (Doc. #28) should be severed; a new action should be opened with these three counts renumbered as Counts One, Two, and Three, respectively; and the parties should be realigned, with Defendant as the new Plaintiff and Plaintiff and Third Party Defendant as the new Defendants; and (6) Defendant should be ordered to amend, within fourteen days, Count Three in the Counterclaim and the Third Party Complaint in order to comply with Federal Rule of Civil Procedure 9(b). On August 17, 2009, Defendant filed timely objections (Doc. #44) to the magistrate judge's report and recommendation, and Plaintiff and Third Party Defendant timely replied (Doc. #45).

**I.      Defendant's Counts One, Two, and Six Against Plaintiff and Third Party Defendant**

The court agrees with the magistrate judge's recommendation that Counts One, Two, and Six, contained in Defendant's counterclaim against Plaintiff and third party complaint against Third Party Defendant, are due to be dismissed.

A.     Illinois Law Governs the Guaranty Agreement

By agreement of the parties, Illinois law governs the "validity, interpretation, [and] effect" of the Guaranty. (Doc. #1-6).[2] A federal district court, sitting in diversity, applies the choice of law rules from the state in which it sits. *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Era Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 895 n.1 (11th Cir. 2009). Under Alabama law, "[w]hile parties normally are allowed to choose another state's laws to govern an agreement, where application of that other state's laws would be contrary to Alabama policy, the parties' choice of law will not be given effect and Alabama law will govern the agreement." *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 507 (Ala. 1991). The parties have not asserted Alabama law nor objected to the applicability of Illinois law. Accordingly, the law of Illinois governs resolution of this issue.

B.     Illinois's UCC is Inapplicable

First, Defendant claims that Article 9 of the UCC renders the waiver of commercial reasonableness ineffective. Indeed, Article 9, as adopted by the Illinois Legislature, contains a provision that precludes judicially enforcing waivers of commercial reasonableness. 810 Ill. Comp.

---

[2] Although a motion to dismiss generally tests only the complaint without reference to external evidence or documents, "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings *and exhibits attached thereto*.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)) (emphasis added); *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is limited to the four corners of the complaint. A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims.") (citations omitted); *Gross v. White*, No. 08-14411, 2009 U.S. App. LEXIS 15939, at *13 (11th Cir. July 17, 2009) ("Even documents submitted by a defendant with a motion to dismiss, rather than by the plaintiff with the complaint, may be considered by the court if the plaintiff refers to those documents in the complaint and those documents are central to the plaintiff's claim.") (citations omitted).

Here, Plaintiff attached the Guaranty Agreement to its Complaint as Exhibit D (Doc. #1-6), and the Guaranty Agreement is a core issue in this litigation. Although Defendant did not attach the Agreement to his Counterclaim and Third Party Complaint, (1) in his pleading, he referenced the document and accepted its authenticity; and (2) the document creates the legal relationship between the parties. Furthermore, under Illinois substantive law, "[t]he meaning of a guaranty is a question of law which the court determines." *Addison State Bank v. Nat'l Maint. Mgmt., Inc.*, 529 N.E.2d 30, 33 (Ill. App. Ct. 1988). Accordingly, the court legitimately may consider the terms of the Guaranty Agreement when determining the propriety of dismissing the Counterclaim and Third Party Complaint.

Stat. 5/9-610(b) (2009) (creating right to commercially reasonable disposition of collateral); 810 Ill. Comp. Stat. 5/9-602(7) (2009) (rendering waivers of the right to commercially reasonable disposition ineffective).  Accordingly, the unstated assumption of Defendant's argument is that Article 9, as adopted by the Illinois Legislature, controls the validity and effect of the Guaranty Agreement. Article 9 "provides a comprehensive scheme for the regulation of security interests in personal property and fixtures." 810 Ill. Comp. Stat. 5/9-101 (2009) Advisory Committee note.  A threshold issue, therefore, in determining whether Article 9 forecloses Plaintiff and Third Party Defendant's contention is whether a guaranty agreement constitutes a security interest.

Illinois's Article 1 defines a "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation.  The term also includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Article 9." 810 Ill. Comp. Stat. 5/1-201(b)(37) (2009).  The appellate courts of Illinois have yet to address whether a guaranty agreement fits this definition.  The Southern District of New York, however, addressing New York's UCC,[3] confronted this issue in *Royal Palm Senior Investors, LLC v. Carbon Capital II, Inc.*, No. 08 CV 4319 (BSJ), 2009 WL 1941862, at *10 (S.D.N.Y. July 7, 2009).  Specifically, the court concluded that Article 9 "does not govern a guaranty agreement, which is merely a guaranty to pay an underlying debt and does not itself create a security interest as it does not secure a note by any specific personal property or fixtures of the guarantor." *Id.*  This holding is persuasive because the court merely applied the definition of a "security interest"

---

[3] New York's UCC provision addressed in *Royal Palm* is identical to the relevant Illinois provision.  *Compare* N.Y. U.C.C. Law § 9-109 (Consol. 2009) (defining the scope of Article 9), *with* 810 Ill. Comp. Stat. 5/9-109 (2009) (same).

to the definition of a "guaranty agreement" as opposed to crafting a novel rule of law. Accordingly, an Illinois court, presented with the same issue, would likely reach the same conclusion.

The Guaranty Agreement, which is the subject of this litigation, accords with the Southern District of New York's observation. In particular, Paragraph 1 expresses the essence of the arrangement:

> Guarantor [Defendant] hereby unconditionally and irrevocably guaranties to Lender the punctual payment and performance when due, whether at stated maturity or by acceleration or otherwise, of the indebtedness and other obligations of Borrower to Lender evidenced by the Note and any other amounts that may become owing by Borrower under the Loan Documents . . . .

(Doc. #1-6 ¶ 1). The purpose of the Guaranty Agreement, therefore, is to ensure payment in the event Borrower, SDC Eagles, failed to perform. The terms of the Guaranty Agreement specify the nature of the relationship between Defendant and LaSalle Bank – noticeably absent, however, is a provision creating a security interest in any of Defendant's personal property. Consequently, Illinois's UCC provision, precluding the waiver of commercial reasonableness, is irrelevant to the transaction under review here.

    C.    <u>The Viability of Counts One, Two, and Six Turns on the Validity of the Guaranty Agreement's Waivers</u>

The magistrate judge's recommendation to dismiss Counts One, Two, and Six is premised on the conclusion that the waivers contained in the Guaranty Agreement preclude the causes of action. The court agrees that the validity of the waivers determines the availability of the claims.

First, regarding Count One, Defendant requests a declaratory judgment "declaring that the amount bid at the foreclosure sale was unfairly and unconscionably low." (Doc. #28 at 10). Defendant bases this claim on the allegation that "Rob-Wal and/or BOA (formerly LaSalle) engaged

in fraud, trickery, or other misconduct which may preclude any recovery from Jacobsen and which may also give rise to liability to Jacobsen." (Doc. #28 at 10).  Second, regarding Count Two, Defendant requests damages for the allegedly wrongful foreclosure committed by Bank of America and Rob-Wal Investments. (Doc. #28 at 11).  Third, regarding Count Six, Defendant alleges unjust enrichment against BOA and Rob-Wal.  (Doc. #28 at 14).  As a basis for this claim, Defendant alleges that "Rob-Wal obtained and holds title to property that it obtained illegally and through fraudulent and tortious conduct." (Doc. #28 at 14).  Defendant claims that "[a]ny judgment against [him] with respect to Rob-Wal's claim would result in unjust enrichment." (Doc. #28 at 14).  Accordingly, Defendant requests "a declaratory judgment declaring that the amount bid at the foreclosure sale was unfairly and unconscionably low and that [he] is, therefore, relieved of any obligation he may otherwise have on the guaranty . . . ." (Doc. #28 at 14).

Plaintiff and Third Party Defendant have identified two relevant waivers.  First, Defendant agreed to perform SDC Eagles's obligations under the loan agreement and such performance

> shall not be subject to any counterclaim, set-off, abatement, deferment or defense based upon any claim that Guarantor may have against Lender, Borrower, any other guarantor of Borrower's Obligations or any other person or entity, and shall remain in full force and effect without regard to, and shall not be released, discharged or affected in any way by, any circumstances or condition (whether or not Guarantor shall have any knowledge thereof), including without limitation . . . (k) any other occurrence, circumstance, happening or event, whether similar or dissimilar to the foregoing and whether foreseen or unforeseen, *which otherwise might constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or which otherwise might limit recourse against Borrower or Guarantor to the fullest extent permitted by law*.

(Doc. #1-6 ¶ 4(k)) (emphasis added).  Second, Defendant agreed to "expressly and unconditionally waive[] . . . (v) to the fullest extent permitted by law and except as otherwise expressly provided in

6

this Guaranty or the other Loan Documents, any claims based on allegations that Lender has failed to act in a commercially reasonable manner or failed to exercise Lender's so-called obligation of good faith and fair dealing . . . ." (Doc. #1-6 ¶ 5(v)). Defendant has not located any provision in the Guaranty Agreement or the other Loan Documents that circumscribes this waiver's reach; accordingly, the court takes this waiver as absolute and without restriction.

The court agrees with the magistrate judge that, if these waivers are effective, they dispose of Counts One, Two, and Six. Specifically, in Count One, Defendant asserts that the amount bid was unfairly and unconscionably low. An explanation of the underlying substantive law is critical. The Illinois Court of Appeals explained the contours of good faith and fair dealing:

> It is well established that the duty of good faith and fair dealing is implied in every contract. *Its purpose is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.* Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. The duty of good faith and fair dealing is a limitation on the exercise of that discretion, requiring the part vested with discretion to exercise it reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations.

*Gore v. Indiana Ins. Co.*, 876 N.E.2d 156, 161-62 (Ill. App. Ct. 2007) (citations omitted) (emphasis added); *see also F.D.I.C. v. Rayman*, 117 F.3d 994, 1000 (7 th Cir. 1997) ("'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting . . . .") (applying Illinois substantive law).

Any set of facts Defendant could present in support of Count One necessarily implicates these considerations. The disposition of the property required a certain degree of discretion by

Plaintiff and Third Party Defendant. Consequently, a challenge to the price obtained at the foreclosure sale essentially asserts that Plaintiff and Third Party Defendant took advantage of Defendant by selling the property woefully below market and recouping the difference from him.[4] In other words, for the court to declare that (1) the sale was "unconscionable" or "unfair" and (2) Plaintiff and Third Party Defendant engaged in fraud or trickery, the question of whether and to what extent they endeavored to sell the property in good faith would necessarily become relevant and likely dispositive. The waiver, however, pretermits that inquiry. In short, Defendant is questioning (1) the commercial reasonableness of the asset's disposition at foreclosure[5] and (2) whether the disposition was made in good faith. Paragraph 5(v) of the Guaranty Agreement precludes Defendant from contesting Plaintiff and Third Party Defendant's commercial reasonableness and good faith/fair dealing. Similarly, Count Six, which alleges unjust enrichment through bidding an amount unconscionably low, alleges a commercially unreasonable disposition (or, perhaps in the alternative, a lack of good faith and fair dealing). But Paragraph 5(v), as discussed above, precludes this allegation. Finally, Defendant's Counts One, Two, and Six attempt to set-off his performance

---

[4] Indeed, Defendant's counterclaim and third party complaint makes this allegation: "An actual controversy exists as to whether Rob-Wal and/or BOA (formerly LaSalle) engaged in fraud, trickery, or other misconduct which may preclude any recovery from Jacobsen and which may also give to liability to Jacobsen." (Doc. #28 at 10).

[5] Both parties contend, at various levels, that "commercial reasonableness" has applicability to this transaction. Defendant claims that, under Illinois law, waivers of commercially reasonable collateral disposition are unenforceable. (Doc. #39 ¶ 7). Plaintiff (Doc. #32 at 5-7) and Third Party Defendant (Doc. #33 at 8-10) both claim that Defendant has waived his right to question the commercial reasonableness of the foreclosure sale. Under Illinois law, however, the concept of "commercial reasonableness" is not a free-floating principle of law. The standard is applicable only in the context of transactions covered by the UCC. *See, e.g.*, *Bockman Printing & Servs., Inc. v. Baldwin-Gregg, Inc.*, 572 N.E.2d 1094, 1101 (Ill. App. Ct. 1991) (assessing "commercial reasonableness" in the context of UCC Article 2); *Washburn v. Union Nat'l Bank & Trust Co. of Joliet*, 502 N.E.2d 739, 742 (Ill. App. Ct. 1986) (assessing "commercial reasonableness" in the context of UCC Article 9). Although serious questions remain as to whether the standard of commercial reasonableness has any application in this context, the court assumes, without decision, its applicability given neither party's objection.

obligations with the amount owed for allegedly wrongful conduct. To the extent that Defendant is requesting a set-off against the amount owed under the Guaranty Agreement based on a legal or equitable claim, Paragraph 4(k) renders that cause of action unavailable.[6]

### D. The Waivers are Enforceable Under Illinois Common Law

Plaintiff relies on *Lincoln Park Federal Savings & Loan Association v. Carrane*, 548 N.E.2d 636 (Ill. App. Ct. 1989),[7] for the proposition that express waivers of (1) commercial reasonableness and (2) good faith and fair dealing are effective under Illinois law. That extrapolation is partially correct. In particular, the court in *Carrane* analyzed the following language in a guaranty agreement: "the undersigned hereby waives demand, protest, notice of protest or notice of default, presentment of payment and diligence in the collection of said note or in the preservation and/or enforcement of said security." *Id.* at 639. Based on that particular language, the court reasoned, "any obligation to act with *commercial reasonableness* has been waived." *Id.* (emphasis added). Thus, *Carrane* permits the enforcement of implied waivers of commercial reasonableness.

---

[6]Additionally, the remaining counts, at present, are not susceptible to this analysis. Count Three alleges fraud in connection with the bidding at the foreclosure sale. Although this claim walks a fine line between a claim precluded by the waivers and a claim properly ancillary to the transaction, Defendant has been granted leave to amend with instructions to plead with particularity. The court reserves judgment regarding whether this claim falls within the purview of the waivers until Defendant has amended. Count Four, styled "Suppression," is a form of fraud and, therefore, is subject to the same observation. Finally, Count Five, "Conspiracy," is a cause of action dependent on the success of the remaining Counts Three and Four. As such, if Defendant's fraud claims are eventually dismissed, so too should his claim for conspiracy absent his allegation of a new, independent cause of action. *See Allied Supply Co. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991) ("[A] conspiracy itself furnishes no cause of action. The gist of the action is not conspiracy but the underlying wrong that was allegedly committed. If the underlying cause of action is not viable, the conspiracy claim must also fail.") (citations omitted).

[7]"[F]ederal courts are bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise." *King v. Order of United Commercial Travelers*, 333 U.S. 153, 158 (1948); *see also West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."); *Bravo v. United States*, No. 06-13052, 2009 U.S. App. LEXIS 17925, at *2-5 (11th Cir. Aug. 3, 2009) (synthesizing cases).

Here, however, the Guaranty Agreement contains an *express* waiver of commercial reasonableness: "Guarantor expressly and unconditionally waives . . . (v) to the fullest extent permitted by law and except as otherwise expressly provided in this Guaranty or the other Loan Documents, any claims based on allegations that Lender *has failed to act in a commercially reasonable manner* . . . ."  (Doc. #1-6 ¶ 5(v)) (emphasis added).[8]  It follows inexorably from the *Carrane* court's reasoning that express waivers are permissible; therefore, the Guaranty Agreement's express waiver here is enforceable and precludes, as a matter of law, Plaintiff's contention that Defendant failed to act in a commercially reasonable manner.

*Carrane*, however, is silent regarding waivers of good faith and fair dealing.  Nevertheless, the Illinois courts have long recognized the effectiveness of express waivers in those areas.[9]  *See, e.g.*, *Foster Enterprises, Inc. v. Germania Fed. Sav. & Loan Ass'n*, 421 N.E.2d 1375, 1380 (Ill. App. Ct. 1981) ("There can not be any doubt that a covenant of fair dealing and good faith is implied into every contract absent express disavowal.").  Here, as between Defendant and LaSalle Bank, the waiver contained in the Guaranty included the following language: "Guarantor expressly and unconditionally waives . . . (v) to the fullest extent permitted by law and except as otherwise expressly provided in this Guaranty or the other Loan Documents, any claims based on allegations that Lender *has . . . failed to exercise Lender's so-called obligation of good faith and fair dealing*

---

[8] Although this language indicates that, perhaps, other portions of the Guaranty Agreement or the Loan Documents curtail the waiver's scope, neither Defendant in his submissions nor the court in its review has located them.

[9] The Illinois Court of Appeals, in *Chemical Bank v. Paul*, 614 N.E.2d 436, 441-42 (Ill. App. Ct. 1993), rejected a theory of implied waivers of good faith and fair dealing based on a general waiver of defenses in the context of a guaranty agreement.  Here, however, the waiver contained in the Guaranty Agreement is express; accordingly, the decision in *Chemical Bank* is inapposite.

10

. . . ." (Doc. #1-6 ¶ 5(v)) (emphasis added).  According to the unambiguous terms of the waiver, Defendant expressly waived his right to good faith and fair dealing.

## II.     Defendant's Miscellaneous Objections

On August 17, 2009, Defendant timely filed his objections (Doc. #44) to the magistrate judge's report and recommendation.  Aside from the substantive objections addressed above, Defendant made the following procedural objections: (1) Objection One: "The Report does not specify what standard of review the Magistrate Judge has applied, and it appears that the liberal standard articulated above has not been applied;" (2) Objection Three: "[Defendant] objects to the Report to the extent that it purports to make conclusive findings of fact, as the plaintiff's motion to dismiss and any consideration of same is clearly based on the allegations of the parties in the pleadings;" and (3) Objection Four: "[Defendant] objects to the Report to the extent that it proposed that any of [his] claims be dismissed with prejudice.  Any dismissal on Rule 12(b)(6) grounds should be without prejudice."  The court addresses each objection in turn.

First, regarding the standard of review, Defendant asserts that "[t]he Report does not specify what standard of review the Magistrate Judge has applied,  and it appears that the liberal standard . . . has not been applied." (Doc. #44 ¶ 1).  As Plaintiff and Third Party Defendant correctly observe, "[Defendant] offers no explanation of this conclusory statement, nor does he identify any well-pled allegation that was not taken as true or that was not viewed in the light most favorable to [him]." (Doc. #45 ¶ 1).  The court agrees with Plaintiff and Third Party Defendant and disregards Defendant's first objection.

Second, regarding findings of fact, Defendant "objects to the Report to the extent that it purports to make findings of fact, as the plaintiff's motion to dismiss and any consideration of same

11

is clearly based on the allegations of the parties in the pleadings." (Doc. #44 ¶ 3). Defendant neither elaborates nor identifies the portion or portions of the magistrate judge's report that allegedly makes these findings of fact. At best, Defendant is contending that the magistrate judge improperly considered the terms of the Guaranty Agreement when evaluating the motion to dismiss. As previously discussed, however, the court's consideration of the Guaranty Agreement at this stage is proper for two reasons. First, under Illinois substantive law, "[t]he meaning of a guaranty is a matter of law, to be determined by the court." *Dee v. Bank of Oakbrook Terrace*, 406 N.E.2d 195, 198 (Ill. App. Ct. 1980). Second, under Eleventh Circuit law, "[a] court may consider only the complaint itself and any documents referred to in the complaint which are central to the claim." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)). Here, Defendant referenced the Guaranty Agreement in his Counterclaim and Third Party Complaint: "Jacobsen admits that he executed a guaranty on or about January 3, 2006, and that the document attached to the complaint as Exhibit 'D' is a true and correct copy of said guaranty." (Doc. #28 ¶ 11). Moreover, the Guaranty Agreement, insofar as Counts One, Two, and Three are concerned, is "central" because it defines the nature and scope of the relationship between Defendant, Plaintiff, and Third Party Defendant. The terms of the Guaranty Agreement dictate whether and to what extent Defendant may assert claims against Plaintiff and Third Party Defendant in the context of this transaction. Accordingly, assuming that Defendant's challenge to the magistrate judge's report is based on his consideration of the

Guaranty Agreement,[10] that argument is wide of the mark. The magistrate judge properly considered the contract's terms.

Third, Defendant objects to the magistrate judge's recommendation to dismiss Counts One, Two, and Three with prejudice. In support of this objection, Defendant claims that "[a]ny dismissal on Rule 12(b)(6) grounds should be without prejudice." (Doc. #44 ¶ 4). As Plaintiff and Third Party Defendant correctly note, according to Rule 41(b), "[u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) and *any dismissal not under this rule* – except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits." Fed. R. Civ. P. 41(b) (emphasis added). Absent the court's exercise of its discretion, the dismissal operates as an adjudication on the merits, and the dismissal is with prejudice. *See, e.g.*, *Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice. That determination is within the district court's discretion."). Aside from Defendant's cursory assertion that the dismissal "should be without prejudice," Defendant has not identified any basis for the court to exercise its discretion to dismiss those claims without prejudice.[11] Accordingly, the magistrate judge's recommendation to dismiss with prejudice was appropriate.

---

[10] Again, the court must engage in guesswork, as Defendant failed to specify the portions of the report that allegedly make factual conclusions.

[11] The court could construe Defendant's objection as a request for leave to amend his Counterclaim and Third Party Complaint; however, according to the Eleventh Circuit, "[a] district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor request leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). Because Defendant is represented by counsel and never requested leave to amend (as a request to dismiss without prejudice does not necessarily translate to such a request), the court is not required to offer *sua sponte* an opportunity to amend.

### III.     Conclusion

The Guaranty Agreement contains three waivers relevant here: (1) a waiver of all legal or equitable relief aimed at setting off Defendant's obligations under the Guaranty Agreement; (2) a waiver of his purported right to commercial reasonableness; and (3) a waiver of the implied covenant of good faith and fair dealing.  These waivers underlie Counts One, Two, and Six of Defendant's counterclaim and third party complaint.  Because they are enforceable under Illinois common law, this court accepts the recommendations of the magistrate judge to dismiss them with prejudice.

Therefore, having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation and Defendant's objections filed in response thereto, and having emphasized certain critical points in this opinion, the court concludes that the magistrate judge's report is due to be and is hereby **ADOPTED** and the magistrate judge's recommendation is **ACCEPTED**.

Accordingly, Plaintiff's Motion to Dismiss Defendant's Amended Counterclaim (Doc. #32) is due to be granted in part and denied in part.  Counts One, Two, and Six of the Amended Counterclaim (Doc. #28) are due to be dismissed with prejudice.  Plaintiff's Motion to Dismiss Defendant's Amended Counterclaim is due to be denied without prejudice with respect to Counts Three, Four, and Five.  Third Party Defendant's Motion to Dismiss Defendant's Third Party Complaint (Doc. #33) is due to be granted in part and denied in part.  Counts One, Two, and Six of the Third Party Complaint (Doc. #28) are due to be dismissed with prejudice.  Third Party Defendant's Motion to Dismiss Defendant's Third Party Complaint is due to be denied without prejudice with respect to Counts Three, Four, and Five.  Counts Three, Four, and Five of the Amended Counterclaim and Third Party Complaint are due to be severed.

The court further finds that (1) a separate action is due to be opened, and assigned to United States Magistrate Judge Harwell G. Davis, III, (2) the Amended Counterclaim and Third-Party Complaint will be filed as a complaint in the new action, with Robert Jacobsen as plaintiff and Rob-Wal Investment Company and Bank of America as defendants; and (3) Counts Three, Four, and Five of the Amended Counterclaim will be designated in the Third Party Complaint as Counts One, Two, and Three of the complaint in this separate action. Defendant (Plaintiff in the new action) is to amend Count Three (Count One in the new action) in order to comply with Federal Rule of Civil Procedure 9(b)'s particularity requirement.

A separate order will be entered in accordance with this Memorandum Opinion.

**DONE** and **ORDERED** this      24th      day of September, 2009.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE